UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                           Case No. 06-20491

vs.                                          HON. MARK A. GOLDSMITH

ANDRE VAN,

        Defendant.
_____/

## OPINION & ORDER
## DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (Dkt. 65)

A jury found Defendant Andre Van guilty of multiple drug and weapons charges. See Judgement (Dkt. 25). On February 21, 2008, the Honorable John Corbett O'Meara sentenced Van to 30 years' imprisonment. Id.[1] Van is currently incarcerated at the Elkton federal correctional institution (FCI Elkton) and has a projected release date of November 6, 2033.

On July 11, 2020, Van filed a motion for compassionate release based on his fear of contracting COVID-19 (Dkt. 65). Van argued that the factors set forth in 18 U.S.C. § 3553(a) favored his release because, among other reasons, if he had been sentenced after the United States Court of Appeals for the Sixth Circuit issued its opinion in United States v. Havis, 927 F.3d 382 (6th Cir. 2019) (holding that attempt crimes do not qualify as controlled substance offenses), Van's sentence would have been significantly shorter, as his prior 2004 conviction for attempted delivery of controlled substances could not have served as a predicate for sentencing him under the (higher) career offender guideline. Specifically, Van's guidelines range would have been 97 to 106 months. The Court denied

---

[1] This case was reassigned to the undersigned on September 9, 2019.

Van's motion based on the § 3553(a) factors (Dkts. 79, 82). Van appealed the denial (Dkt. 80). The Sixth Circuit vacated the Court's denial of Van's motion for compassionate release and remanded the case for further consideration in light of United States v. Elias, 984 F.3d 516, 519 (6th Cir. 2021) (Dkt. 85). In Elias, the Sixth Circuit clarified that U.S.S.G. § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates and, therefore, district courts need not consider it when ruling on such motions. 984 F.3d at 519.

On remand, the parties filed supplemental briefs (Dkts. 89, 91). In his supplemental brief, Van argued that not only is his fear of contracting COVID-19 an extraordinary and compelling circumstance justifying his release but so is the sentencing disparity between the sentence Van received and the one he would have received if he had been sentenced after Havis was issued. Def. Supp. Br. at 11–15 (Dkt. 89). In response, the Government argued that Van's fear of contracting COVID-19 is no longer an extraordinary and compelling reason to release him in light of the fact that he is now fully vaccinated and, further, Havis by itself is not an extraordinary and compelling reason for release because it applies only to cases on direct appeal and not to cases like Van's where the judgment has become final. Gov't Supp. Br. at 5, 34 (Dkt. 91).

Shortly after the parties submitted their supplemental briefs, a Sixth Circuit panel issued a decision in United States v. Jarvis, holding that the First Step Act's (FSA) non-retroactive changes to sentencing statutes cannot, as a matter of law, constitute an extraordinary and compelling reason to grant an inmate a sentence reduction. 999 F.3d 442, 444 (6th Cir. 2021). This Court ordered the parties to file supplemental briefs on the impact of Jarvis on Van's motion (Dkt. 97), which the parties did (Dkts. 98, 99). Van also filed a reply to the Government's supplemental brief regarding Jarvis (Dkt. 101), several notices of supplemental authority regarding opinions where district court judges

have declined to follow Jarvis (Dkts. 103, 104), and a notice of supplemental authorities regarding breakthrough infections (Dkt. 105).[2]

Subsequently, the Sixth Circuit issued an opinion in United States v. Hunter, 12 F.4th 555 (6th Cir. 2021), further clarifying the circuit law on whether non-retroactive changes in the law can ever constitute extraordinary and compelling reasons for a sentence reduction. The Government filed a notice of supplemental authority regarding Hunter (Dkt. 106), and the Court granted Van leave to file a response to the notice (Dkt. 107). Van filed a response, arguing that Hunter was wrongly decided (Dkt. 108).

The parties later filed additional notices of supplemental authority regarding an inmate who died despite being fully vaccinated (Dkt. 109) and the Sixth Circuit's recent decision in United States v. Lemons, No. 21-5313, ___ F.4th ___, 2021 WL 4699249 (6th Cir. Oct. 8, 2021) (Dkts. 110, 111).

Having reviewed all the briefing and attachments submitted by the parties, the Court denies Van's motion.[3]

## I. DISCUSSION

The FSA modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3582(c), such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences. United States v. Ruffin, 978 F.3d 1000, 1003–1004 (6th Cir. 2020).[4] Before granting a compassionate-release motion, a district court must engage in

---

[2] "Breakthrough infection" refers to when a virus (in this case, COVID-19) "breaks through" the protective barrier that the vaccine provides and causes the vaccinated person to become infected with the virus.

[3] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2).

[4] An incarcerated defendant must comply with the mandatory exhaustion requirements of § 3582(c) before filing a motion for compassionate release. The Government has not raised Van's exhaustion of his administrative remedies as an issue on remand.

a three-step inquiry: (i) the court must find that "extraordinary and compelling reasons warrant [a sentence] reduction"; (ii) it must ensure "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (iii) it must "consider[] all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." United States v. Jones, 980 F.3d 1098, 1101 (6th Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)). If all of those requirements are met, the district court "may reduce the term of imprisonment," but it need not do so. 18 U.S.C. § 3582(c)(1)(A).

Regarding the first step of the inquiry, the Sixth Circuit has held that, with respect to motions for compassionate release filed by imprisoned individuals, "extraordinary and compelling" reasons are not limited to those set forth in U.S.S.G. § 1B1.13. Jones, 980 F.3d at 1109. It has further held that "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the [FSA], district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." Id.

### A. Extraordinary and Compelling Circumstances

Van argues that (i) his health-based concerns about contracting COVID-19 and (ii) his sentencing disparity in light of Havis are extraordinary and compelling reasons to release him. Each argument is addressed and rejected in turn.

#### i. COVID-19

With respect to motions for compassionate release premised on a defendant's fear of contracting COVID-19, the Sixth Circuit has held that "generalized fears of contracting COVID-19, without more, do not constitute a compelling reason" to grant compassionate release. United States v. Ramadan, No. 20-1450, 2020 WL 5758015, at *2 (6th Cir. Sept. 22, 2020). Rather, a defendant must point to specific conditions that create a higher risk that the defendant will contract

4

the virus. To determine whether a defendant's specific conditions render him particularly vulnerable to contracting COVID-19, courts generally consult the guidance on high-risk factors published by the Centers for Disease Prevention and Control (CDC). See Elias, 984 F.3d at 521.

Van argues that he is particularly vulnerable due to his age (63 years old) and medical conditions (hypertension, obesity, type 2 diabetes, "periodic bouts" of bronchitis, hyperlipidemia, and depression). While some of these conditions may increase unvaccinated individuals' risk of severe illness from COVID-19,[5] the same is not true for vaccinated individuals. According to the CDC, the vaccine reduces the risk of COVID-19 among people who are fully vaccinated "by 90 percent or more."[6] Further, in the case of people who are vaccinated but still contract COVID-19, the vaccine has been shown to "provide protection against severe illness and hospitalization among people of all ages eligible to receive [it]." Id. Significantly, "[t]his includes people . . . who are at higher risk of severe outcomes from COVID-19." Id.

Van received the second dose of the two-dose Moderna vaccine on March 30, 2021. See Bureau of Prisons (BOP) Medical Records at PageID.1862 (Dkt. 92-1). As a result, Van is now fully vaccinated, meaning that he is protected to the full extent by the vaccine.[7] Thus, Van's fear of contracting the virus or suffering severe illness is not a compelling reason to release him. See Lemons, 2021 WL 4699249, at *3 ("[A] defendant's incarceration during the COVID-19

---

[5] See CDC, "People with Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html [https://perma.cc/HC6C-U4XW] (recognizing hypertension, obesity, type 2 diabetes—but not ages under 65, "periodic bouts" of bronchitis, hyperlipidemia, or depression—as conditions that "can" make an individual more likely to suffer severe illness from COVID-19).

[6] CDC, "COVID-19 Vaccines Work," https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html [https://perma.cc/RY9T-ZCCR].

[7] CDC, "COVID-19 Vaccines That Require 2 Shots," https://www.cdc.gov/coronavirus/2019-ncov/vaccines/second-shot.html [https://perma.cc/2GY7-3C9N].

pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction."); United States v. Collier, No. 2:15-cr-20774-1, 2021 WL 1560079, at *2 (E.D. Mich. Apr. 21, 2021) ("Courts in the Eastern District of Michigan routinely refuse to find that a fully vaccinated prisoner has an extraordinary and compelling reason for release because of their fear of contracting COVID-19.") (collecting cases).

To be clear, although the Sixth Circuit recently held that an inmate's access to the vaccine precludes granting the inmate compassionate release, it also acknowledged that an inmate prisoner who is "unable to receive or benefit from a vaccine" may still be able to show extraordinary and compelling reasons warranting a sentence reduction. Lemons, 2021 WL 4699249, at *3 (punctuation modified). Van was clearly able to receive the vaccine. However, Van appears to argue that he cannot benefit from the vaccine, for several reasons. The Court considers and rejects each of these arguments in turn.

First, Van argues that because the vaccine is not 100% effective, some number of fully vaccinated people are not protected from symptomatic infection. Def. Supp. Br. at 18; Def. Notice of Supp. Authorities Regarding Breakthrough Infections at 1–2 (Dkt. 105). However, as discussed above, the vaccine is both highly effective at preventing infection as well as severe illness for the vast majority of people. The small chance that Van is one of the few fully vaccinated individuals who could still get infected or experience severe illness is too speculative to justify granting him compassionate release.

Second, Van argues that "[d]ue to the limitations of the vaccine trials, there is no guarantee that the vaccines will be as effective in prison settings." Def. Supp. Br. at 19. The currently available data undercuts Van's argument that conditions at his specific prison—FCI Elkton—

warrant releasing him.  Presently, of the 1,397 inmates at FCI Elkton,[8] 1,259 have been vaccinated (90.12%).[9]  Further, there are currently no confirmed active cases of COVID-19 among inmates and only two cases among staff at FCI Elkton.[10]

Third, Van argues that "vaccines may be less effective for obese people like Mr. Van." Def. Supp. Br. at 19.  However, Van's argument that the vaccine may be less effective for obese people like Van underscores that it is pure guesswork as to how Van's obesity impacts his vaccine response.  Further, the CDC article that Van relies on in arguing that obesity may lower his vaccine response suggests that Van's concerns can be mitigated through diet and physical activity.  See CDC, "Obesity, Race/Ethnicity, and COVID-19" (Dkt. 89-4).  The fact that Van's obesity concerns can be significantly diminished through diet and physical activity greatly reduces the need to use the extraordinary remedy of releasing Van to combat his health-based fears.

Relatedly, Van argues that his age (63) and diabetes increase the likelihood that he will contract COVID-19 despite being fully vaccinated.  See Resp. to Gov't Notice of Supp. Authority re Lemons at 1 (Dkt. 111).  To support the former point, Van cites various authorities showing that there is an increased risk of severe illness for people ages 65 and older.  Id. at 2–3.  However, Van is younger than 65.  His arguments that his "physiological age" is 10–15 years older than his actual age is a novel attempt to show that his age exceeds 65.  However, nothing in the CDC guidelines support this math.  Rather, the guidelines simply state that people over the age of 65—not people with a "physiological age" over 65—have an increased risk of severe illness.  To support Van's

---

[8] BOP, "FCI Elkton," https://www.bop.gov/locations/institutions/elk/ [https://perma.cc/FX33-6BNN].

[9] BOP, "COVID-19 Vaccine Implementation," https://www.bop.gov/coronavirus/ (last visited Oct. 25, 2021).

[10] BOP, "COVID-19 Cases," https://www.bop.gov/coronavirus/ (last visited Oct. 25, 2021).

latter argument that his diabetes increases his risk of severe illness from a breakthrough infection, he cites one article, which simply states that "[b]reakthrough infections are also likely to be most severe among . . . those who have conditions like . . . diabetes."[11] The article apparently based this conclusion on "figures gathered by The New York Times." Id. However, the article does not disclose these figures, leaving the Court to guess as to the data used to support the conclusion. Moreover, the CDC has not issued guidance establishing that diabetes increases an individual's risk of a breakthrough infection and a severe illness. Van has failed to properly support his position that he is unable to benefit from the vaccine due to his diabetes.

Fourth, Van suggests that his fear of variants of the virus remains a compelling reason to release him. Def. Supp. Br. at 19–20. While various COVID-19 variants—particularly the Delta variant—are on the rise, the CDC currently recommends that the vaccine "offer[s] protection against most variants currently spreading in the United States," rendering vaccinated prisoners' fears of severe illness from variants non-compelling.[12] Thus, Van's fears of the variants should be largely negated by his vaccination status.

Fifth, Van argues that researchers do not know how long protection offered by the vaccine will last. Def. Supp. Br. at 20. It is true that it is currently unknown how long immunity provided by the vaccine lasts. However, this means that it is pure speculation as to whether and when Van's immunity provided by the vaccine may wane in the future. Speculation as to the permanence of the protection afforded by the vaccine "'does not justify the extreme remedy of compassionate release.'" United States v. Loftly, No. 2:15-CR-132, 2021 WL 2932845, at *3 n.3 (E.D. Tenn.

---

[11] Apoorva Mandavilli, "In a Handful of States, Early Data Hint at a Rise in Breakthrough Infections," The New York Times (Aug. 17, 2021).

[12] CDC, "COVID-19 Vaccines Work," https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html [https://perma.cc/5DPS-RKMC].

July 12, 2021) (quoting United States v. Shah, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020)).

For these reasons, the Court holds that Van's vaccination status renders his fear of COVID-19 a non-compelling reason to grant him release.[13]

### ii. Sentencing Disparity

Van contends that the disparity between the sentence he received and the sentence he would have received if he had been sentenced after Havis is an extraordinary and compelling reason to grant him compassionate release. Def. Supp. Br. at 13–15. The Government, on the other hand, argues that Havis's non-retroactive change to sentencing laws is not an extraordinary and compelling reason to reduce Van's sentence. Gov't Supp. Br. at 34–35 (citing United States v. Nix, 15-cr-36, 2021 WL 1518632, at *3 (E.D. Tenn. Apr. 16, 2021) ("[A] compassionate release motion was not an appropriate vehicle for applying Havis to a case which Havis would not otherwise apply."); United States v. Davis, 13-cr-00046-8, 2021 WL 829367, at *11 (E.D. Tenn. Mar. 4, 2021) ("Havis does not apply once a criminal judgment has become final, and the Court, by ruling differently, would arguably create precedent that runs crosswise with the Sixth Circuit's precedent . . . .")) (other citations omitted).

This debate was seemingly resolved by the Jarvis panel's holding that the FSA's non-retroactive changes to sentencing laws cannot serve as extraordinary and compelling reasons for release. Although Jarvis involved the FSA's non-retroactive changes, it is nevertheless applicable

---

[13] The Court is not penalizing Van for his decision to get vaccinated. Because the availability of highly effective vaccines renders a prisoner's fear of COVID-19 non-compelling, courts routinely deny compassionate release to prisoners who have been offered but refused the vaccine. United States v. Csiki, No. 19-20256, 2021 WL 1884702, at *2 (E.D. Mich. May 11, 2021) (collecting cases). The Court commends Van on his sensible decision to get vaccinated—the most effective action to protect himself and his community from the virus.

here, given that "Havis is not a new rule of constitutional law that the Supreme Court has made retroactive." Alexander v. United States, No. 19-4005, 2020 WL 6111201, at *2 (6th Cir. June 30, 2020).

However, as Van points out, certain district courts have declined to follow Jarvis, instead opting to follow an earlier panel decision rejected by Jarvis, United States v. Owens, 996 F.3d 755 (6th Cir. 2021). Def. 1st Notice of Supp. Authority (Dkt. 103) (discussing United States v. Wingate, No. 11-20481, 2021 WL 3124187 (E.D. Mich. July 23, 2021)); Def. 2d Notice of Supp. Authority (Dkt. 104) (discussing United States v. Davenport, No. 91-81019, 2021 WL 3124187 (E.D. Mich. Aug. 8, 2021)). The Owens panel held that in making a determination about whether extraordinary and compelling reasons merit compassionate release, a district court may consider, along with "other factors" (such as a lengthy sentence, rehabilitative efforts, a comprehensive reentry plan, a defendant's youth at the time he or she committed the crime, and health problems elevating a defendant's risk to COVID-19), the disparity between a defendant's actual sentence and the sentence that the defendant would have received if the FSA had applied when the defendant was sentenced. 996 F.3d at 760.

Following Jarvis, the Sixth Circuit issued an opinion, Hunter, clarifying that "the text and structure of § 3582(c)(1)(A) limit a district court's discretion to define 'extraordinary and compelling' in two ways relevant to this case." 12 F.4th at 562. "First, non-retroactive changes in the law, whether alone or in combination with other personal factors, are not 'extraordinary and compelling reasons' for a sentence reduction." Id. "Second, facts that existed when the defendant was sentenced cannot later be construed as 'extraordinary and compelling' justifications for a sentence reduction." Id. The Hunter court noted the conflict between the Jarvis panel's and Owens panel's decisions and, ultimately, concluded that Jarvis was correct. As the Hunter court

10

explained, Owens failed to follow the holding of a prior published opinion, United States v. Tomes, 990 F.3d 500 (6th Cir. 2021), in which the Sixth Circuit held that a non-retroactive change in the law fails to amount to an extraordinary and compelling explanation for a sentencing reduction. Hunter, 12 F.4th at 564 n.4. The Hunter court was obligated to follow Tomes—not Owens—because a prior published decision of the Sixth Circuit is binding unless it is inconsistent with a decision of the United States Supreme Court or the prior decision is overruled by an en banc panel, neither exception being applicable here. Id. (citing Darrah v. City of Oak Park, 255 F.3d 301, 309–310 (6th Cir. 2001)).

Van asks the Court to ignore Hunter for two reasons. First, Van argues, Hunter involved a different non-retroactive decision (United States v. Booker, 543 U.S. 220 (2005)) than Van's case (Havis). This distinction is immaterial; Hunter's broad ruling applies to all non-retroactive changes in the law, not just Booker.

Second, Van argues, Hunter was wrongly decided because it relied on Jarvis—which Van contends was also wrongly decided—and because Hunter "engraft[s] limitations onto a statute that simply are not there." Resp. to Gov't Notice of Supp. Authority at 1 (Dkt. 108). However, it is not this Court's place to second-guess the Sixth Circuit's holding.

In any event, under either the Hunter/Jarvis approach or the Owens approach, Van has not shown extraordinary and compelling reasons for release. Under the former approach, Van's Havis argument fails as a matter of law because non-retroactive changes to sentencing laws cannot serve as extraordinary and compelling reasons for release. Under the latter approach, "other factors" (in addition to a sentencing disparity) must support release if Van is to prevail. No such other factors are present here. First, while Van's 30-year sentence is not short, it is not nowhere near as lengthy as the 115-year sentence that the defendant in Owens received. Second, as discussed below, Van's

11

rehabilitative efforts are commendable, but his behavior while incarcerated has not been perfect. Third, Van has not presented the Court with a comprehensive reentry plan. Fourth, Van was not notably youthful at the time he committed his crime; he committed his crimes in 2005, when he was approximately 46 years old. Cf. Owens, 966 F.3d 772 (discussing United States v. Maumau, 993 F.3d 821, 837 (10th Cir. 2021) (holding that the defendant's young age of 20 at the time of his crime was one of the factors supporting release)). Finally, as discussed above, Van's fears that his health conditions render him vulnerable to COVID-19 are non-compelling.

Moreover, even if Van had shown the existence of extraordinary and compelling circumstances, his release would still be unwarranted based on the § 3553(a) factors, as explained below.

### B. Section 3553(a) Factors

Before granting a sentence reduction under the FSA, the Court must consider the § 3553(a) factors, which include the nature and circumstances of a defendant's offenses, the seriousness of the offenses, the need to promote respect for the law, and the need to protect the public from further crimes by the defendant.

As the Court explained in its November 18, 2020 opinion setting forth its reasons for denying Van's motion for compassionate release, the § 3553(a) factors weigh against granting Van a sentence reduction:

> Van remains a danger to the community. The Government provided a detailed account of Van's criminal history:
>
> > He was first convicted in 1976, when he was 17 years old, of assault with intent to rob and steal while armed. (PSR, ¶ 31). Not long after being discharged from probation, he was convicted in 1980 of unlawful driving away an automobile. (PSR, ¶ 30). In 1984, Van was convicted of attempt carrying a concealed weapon, for which he received a sentence of 6 months' jail and 3 years' probation. (PSR, ¶ 35). His adjustment to probation was poor in that he failed to pay restitution and failed to report as directed. (Id.). From late 1984 to 1992, he received three more felony convictions for uttering and publishing,

> receiving and concealing stolen property, and fleeing police. (PSR, ¶¶ 37–43). In the receiving and concealing case, Van violated his parole multiple times. (PSR, ¶ 40). In 2001, Van was convicted of delivery of a controlled substance. (PSR, ¶ 44). After serving his sentence and being released on parole, Van absconded repeatedly. (PSR, ¶ 46). In 2004, Van was convicted of attempt delivery of a controlled substance. (PSR, ¶ 47). He violated his probation after ultimately being discharged without improvement. (PSR, ¶ 48). Just five months after he was discharged, he was arrested for the armed drug dealing offenses in this case.
>
> Resp. at 23–24.
>
> Van argues that some of his convictions occurred "before his brain was fully-developed," and the rest involved conduct transpiring more that fifteen years ago. Reply at 6 (Dkt. 73). Van's argument is unavailing considering that he has spent nearly half of his adult life on probation or in custody. Additionally, his repeated parole violations and his history for absconding suggests that he will not comply with supervised release conditions. Finally, releasing Van thirteen years before the end of his sentence would not promote respect for the law.

11/20/20 Op. at 3 (Dkt. 82).

In his supplemental brief, filed after this matter was remanded from the Court of Appeals, Van puts forth several new arguments as to why the Court should find that the § 3553(a) factors support granting him a sentence reduction. The Court considers and rejects each argument in turn.

First, Van argues that the pandemic has amplified the severity of his sentence. Def. Supp. Br. at 21. Relatedly, Van argues that his "medical vulnerability [is] of primary importance." Id. at 22. While the pandemic is ongoing, the current conditions at FCI Elkton (discussed above) reflect that the prison's response to the pandemic has been effective. There are currently no active COVID-19 cases at the prison. Accordingly, Van's fears that his health conditions render him vulnerable to severe illness from the virus are not a reason to presently release him.

Second, Van argues that his "rehabilitative efforts have been exemplary, and his nearly unblemished disciplinary history during his 15 years in prison, even more so." Id. At the same time, Van acknowledges that he has been disciplined twice in prison: once for possessing marijuana and once for possessing unauthorized food. Id. The Court commends Van on his

13

rehabilitation efforts. However, Van's disciplinary record reflects that he has not yet been fully rehabilitated. His disciplinary infraction for possession of marijuana is particularly concerning, given his lengthy history of drug crimes. Van's behavior while incarcerated has not been so exemplary as to prove that his sentence should be reduced.

Third, Van argues that because he is housed at a low-security facility, he is not a risk to the community. However, for the reasons stated above, the Court concludes that Van remains a danger to the public.

Finally, Van argues that his sentencing disparity is a factor that weighs in his favor. Under Jarvis, the Court cannot consider Van's sentencing disparity in the analysis of the § 3553(a) factors, since Van has not shown an extraordinary and compelling reason for release. See 999 F.3d at 445. Even if the Court were to consider Van's sentencing disparity, it would not outweigh the other factors, which heavily favor denying Van's motion for compassionate release.

Accordingly, the § 3553(a) factors weigh against granting Van's motion.

## II.  CONCLUSION

For the reasons stated above, Van's motion for compassionate release (Dkt. 65) is denied.

SO ORDERED.

Dated: October 26, 2021  s/Mark A. Goldsmith
      Detroit, Michigan  MARK A. GOLDSMITH
        United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 26, 2021.

      s/Karri Sandusky
      KARRI SANDUSKY
      Case Manager